# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Appeal Nos. 20-3485, 20-3486, 20-3487, 20-3488

IN RE: IMERYS TALC AMERICA, INC.,

*Debtors.*

CYPRUS HISTORICAL EXCESS INSURERS,

*Appellants,*

v.

IMERYS TALC AMERICA, INC., et al.

*Appellees.*

On Appeal from the United States District Court for the District of Delaware, Case Nos. 1:19-cv-00944-MN, 1:19-cv-01120-MN, 1:19-cv-01121-MN, and 1:19-cv-1122-MN, which affirmed orders of the United States Bankruptcy Court for the District of Delaware, Case No. 1:19-cv-10289-LSS

## APPELLANTS' OPENING BRIEF ON APPEAL

Tancred V. Schiavoni
Janine Panchok-Berry
O'MELVENY & MYERS LLP
Times Square Tower, 7 Times Square
New York, NY 10036
(212) 326-2000

Bradley N. Garcia
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

Stamatios Stamoulis
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Columbia Casualty Company is wholly owned by Continental Casualty Company, which is wholly owned by The Continental Corporation, which is wholly owned by CNA Financial Corporation. CNA Financial Corporation has issued shares to the public. Loews Corporation owns the majority of the stock of CNA Financial Corporation and is publicly traded. No other corporation owns 10% or more of the stock of CNA Financial Corporation. Of the above entities, Columbia Casualty Company and Continental Casualty Company are the only parties in the above-styled action.

Continental Casualty Company is wholly owned by The Continental Corporation, which is wholly owned by CNA Financial Corporation. CNA Financial Corporation has issued shares to the public. Loews Corporation owns the majority of the stock of CNA Financial Corporation and is publicly traded. No other corporation owns 10% or more of the stock of CNA Financial Corporation. Of the above entities, Continental Casualty Company is the only party in the above-styled action.

The Continental Insurance Company is wholly owned by Continental Casualty Company. Continental Casualty Company is wholly owned by The Continental Corporation. The Continental Corporation is wholly owned by CNA Financial Corporation. CNA Financial Corporation has issued shares to the public.

Loews Corporation owns the majority of the stock of CNA Financial Corporation and is publicly traded. No other corporation owns 10% or more of the stock of CNA Financial Corporation.  Of the above entities, The Continental Insurance Company and Continental Casualty Company are the only parties in the above-styled action.

Lamorak Insurance Company ("Lamorak") is a wholly owned subsidiary of Bedivere Insurance Company, which in turn is a wholly owned subsidiary of Trebuchet US Holdings, Inc., a Delaware Corporation, which in turn is a wholly owned subsidiary of Trebuchet Investments, Limited, a Bermuda Company. Trebuchet is controlled by voting share ownership by Brad Huntington and John Williams. No publicly held corporation owns more than 10% of Lamorak.

Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company, is a wholly owned subsidiary of National Indemnity Company, which is a wholly owned subsidiary of Berkshire Hathaway Homestate SNL Subgroup, which is a wholly owned subsidiary of National Indemnity Insurance SNL Subgroup, which is a wholly owned subsidiary of Berkshire Hathaway, Inc., a publicly traded company, and to the best of its knowledge no other publicly traded company owns more than 10% of Berkshire Hathaway Inc.'s stock.  Of the above entities, Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company are the only parties in the above-styled action.

National Union Fire Insurance Company of Pittsburgh, PA is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc. Furthermore, AIG Property Casualty U.S., Inc., AIG Property Casualty Inc., and American International Group, Inc. are corporate relatives, but are not parties in the above-styled action.

Lexington Insurance Company is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc. Furthermore, AIG Property Casualty U.S., Inc., AIG Property Casualty Inc., and American International Group, Inc. are corporate relatives, but are not parties in the above-styled action.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

PRELIMINARY STATEMENT ............................................................................1

JURISDICTIONAL STATEMENT ......................................................................2

I.    THE FCR PLAYS A CRITICAL ROLE
      IN ASBESTOS BANKRUPTCIES. ...................................................4

II.   IMERYS RETAINS THE FCR LONG BEFORE THE
      BANKRUPTCY, AND THE COURT THEN APPROVES HIS
      RETENTION DESPITE HIS CONFLICTS. .....................................11

      A.    Imerys Selected Patton Eight Months
            Before Filing For Bankruptcy. ..............................................11

      B.    Young Conaway Represents Certain Appellants in
            the Substantially Related Warren Pumps' Matter. ...................13

      C.    Appellants Object to Mr. Patton's
            Appointment As FCR. .............................................................14

      D.    Patton Supplements His Disclosures About The
            Warren Pumps Conflicts, And Appellants' Objection. ...........17

      E.    The Bankruptcy Court's Decision ...........................................20

      F.    The District Court's Decision .................................................21

SUMMARY OF ARGUMENT ...........................................................................22

STANDARD OF REVIEW .................................................................................24

ARGUMENT ......................................................................................................25

I.    PATTON HAS A DISQUALIFYING CONFLICT
      WITH RESPECT TO FUTURE CLAIMANTS
      AND APPELLANTS UNDER RULE 1.7. .......................................25

      A.    Young Conaway's Concurrent Representation of Future
            Claimants And Certain Appellants Creates An Actual,
            Concurrent Conflict Of Interest Under Rule 1.7. ....................25

iv

**TABLE OF CONTENTS**
**(continued)**

Page

B.    The ABA Formal Opinion On Which The District Court Relied
Confirms The Concurrent Conflicts Of Interest Here. .............31

II.    ESTATE PROFESSIONALS ARE *PER SE* DISQUALIFIED IF
THEY HAVE A CONCURRENT CONFLICT OF INTEREST. ......33

A.    Young Conaway has a Concurrent Conflict
Under the Section 327 "Disinterested" Standard......................33

B.    The Per Se Disqualification Standard
Applicable to Bankruptcy Professionals
Should Apply With Equal Or Greater Force To FCRs.............39

III.    APPELLANTS DID NOT PROSPECTIVELY
WAIVE THE FCR'S CONFLICT. ....................................................43

A.    The Prospective 2014 Waiver Does Not Apply Here..............44

B.    Even if Appellants prospectively waived the conflict,
they should have been notified of the conflict so they
could hire different counsel in Warren Pumps. .......................46

IV.    INSURERS DID NOT FORFEIT ANY
ARGUMENT ON CONFLICTS OF INTEREST. ............................48

V.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
BY IGNORING THE FCR'S INADEQUATE DISCLOSURES. .....50

CONCLUSION .......................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACandS Inc. v. Travelers Casualty*,
   No. 04-cv-00123-JJF (D. Del.) ...........................................................12

*Allen v. Stewart Title Guar.*,
   246 F.R.D. 218 (E.D. Pa. 2007)...........................................................39

*Colorpix Systems of America v. Broan Mfg. Co., Inc.*,
   131 F.Supp.2d 331 (D. Conn. 2001)...............................................27, 28

*End of Road Tr. v. Terex Corp.*,
   2002 WL 242464 (D. Del. Feb. 20, 2002).........................................26

*Freeman v. Pittsburgh Glass Works, LLC*,
   709 F.3d 240 ........................................................................................47

*Glueck v. Jonathan Logan, Inc.*,
   653 F.2d 746 (2d Cir.1981) .................................................................25

*Gray v. Commercial Union Ins.*
   191 N.J.Super. 590, 468 A.2d 721 (App. Div. 1983) .......27, 28, 29, 47

*IBM v. Levin*,
   579 F.2d 271 (3d Cir. 1978) ................................................................26

*In re A.T.*,
   744 N.W.2d 657 (Iowa Ct. App. 2007) ...............................................41

*In re ACandS, Inc.*,
   311 B.R. 36 (Bankr. D. Del. 2004)......................................................12

*In re Am. Biomaterials Corp.*,
   954 F.2d 919 (3d Cir. 1992) ................................................................49

*In re Amatex Corp.*,
   755 F.2d 1034 (3d Cir. 1985) .....................................................7, 10, 40

*In re Armstrong World Indus., Inc.*,
   No. 00–4471 (Bankr. Del. filed March 2, 2002) .................................40

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Asbestos Litig.: Ltd. to Montgomery*,
09C-11-217 ASB (Del. Super. Ct. Nov. 7, 2011) ..............................................10

*In re ASHINC Corp.*,
683 F. App'x 131 (3d Cir. 2017) ........................................................................44

*In re B.E.S. Concrete Prods., Inc.*,
93 B.R. 228 (Bankr. E.D. Cal. 1988).................................................................50

*In re The Babcock & Wilcox Co.*,
No. 00–10992 (Bankr. E.D. La. filed October 4, 2000) ..................................40

*In re BH & P, Inc.*,
949 F.2d 1300 (3d Cir. 1991) .....................................................................24, 33

*In re Braun*,
49 N.J. 16, 227 A.2d 506 (1967) .......................................................................29

*In re Cecil*,
No. 8:12-CV-958-T-27, 2012 WL 3231321 (M.D. Fla. Aug. 3,
2012) ...................................................................................................................37

*In re Combustion Eng'g*,
366 F. Supp. 2d 224 (D. Del. 2005).................................................................44

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ..............................................................................41

*In re Combustion Eng'g*,
No. 03–10495 (Bankr. Del. filed March 17, 2003) ..........................................40

*In re Congoleum Corp.*,
426 F.3d 675 (3d Cir. 2005) ..........................................................25, 26, 34, 42

*In re Congoleum Corpo., et al.*,
No. 03–51524 (Bankr. N.J. filed February 18, 2004)........................................40

*In re Devonshire PGA Holdings LLC*,
548 B.R. 689 (Bankr. D. Del. 2016).................................................................43

*In re Dolan*,
76 N.J. 1, 384 A.2d 1076 (1978) .......................................................................47

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re E. Sugar Antitrust Litig.*,
697 F.2d 524 (3d Cir. 1982) .................................................................39

*In re Envirodyne Indus., Inc.*,
150 B.R. 1008 (Bankr. N.D. Ill. 1993) .................................................34

*In re eToys, Inc.*,
331 B.R. 176 (Bankr. D. Del. 2005) .....................................................36

*In re Fairbanks Co.*,
601 B.R. *Aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407
(S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988) ...........................................................7, 41

*In re Federal-Mogul Glob. Inc.*,
No. 01–10578 (Bankr. Del. filed February 11, 2002) .........................40

*In re Federal-Mogul Global Inc.*,
674 F.3d 355 (3d Cir. 2012) ...................................................................5

*In re Garlock Sealing Technologies, LLC*,
504 B.R. 71 (Bankr. W.D.N.C. 2014) ...................................................8

*In re Granite Partners, L.P.*,
219 B.R. 22 (Bankr. S.D.N.Y. 1998).............................................34, 37

*In re Hammer*,
No. BAP WW-06-1373-MODJ, 2007 WL 7540945 (B.A.P. 9th
Cir. Aug. 17, 2007) .........................................................................36, 48

*In re The Harris Agency, LLC*,
462 B.R. 514 (E.D. Pa. 2011) ..............................................................37

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .................................................................48

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986).................................................6, 7

*In re Katz*,
981 A.2d 1133 (Del. 2009) ...................................................................43

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Kiwi Intern. Air Lines, Inc.*,
344 F.3d 311 (3d Cir. 2003) .................................................................50

*In re Lee*,
1988 WL 130076 (Bankr. C.D. Cal. Nov. 22, 1988).........................50

*In re Licking River Mining, LLC*,
562 B.R. 351 (Bankr. E.D. Ky. 2016) ...............................................48

*In re M & M Mktg., L.L.C.*,
426 B.R. 796 (B.A.P. 8th Cir.), as corrected (June 11, 2010), *aff'd
sub nom. In re M&M Mktg., L.L.C.*, 397 F. App'x 258 (8th Cir.
2010) ....................................................................................................36

*In re Martin*,
817 F.2d 175 (1st Cir. 1987)..............................................................33

*In re Marvel Entm't Grp., Inc.*,
140 F.3d 463 (3d Cir. 1998) ..........................................32, 33, 34, 39

*In re Meridian Auto. Sys.-Composite Operations, Inc.*,
340 B.R. 740 (Bankr. D. Del. 2006).....................................33, 36, 46

*In re Mid-Valley, Inc.*,
305 B.R. 425 (Bankr. W.D. Pa. 2004)...............................................26

*In re Murray*,
No. 11-10535, 2013 WL 625740 (Bankr. N.D. Cal. Feb. 20, 2013)...............37

*In re NNN 400 Capital Ctr. 16, LLC*,
619 B.R. 802 (Bankr. D. Del. 2020)..................................................34

*In re O'Brien Envtl. Energy Corp.*,
188 F.3d 116 (3d Cir. 1999) .......................................................23, 24

*In re Perry*,
194 B.R. 875 (E.D. Cal. 1996) ..........................................................34

*In re Pillowtex, Inc.*,
304 F.3d 246 (3d Cir. 2002) .......................................................32, 39

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Pittsburgh Corning Corp.*,
308 B.R. 716 (Bankr. W.D. Pa. 2004) .....................................................33, 35, 40

*In re Pressman-Gutman Co., Inc.*,
459 F.3d 383 (3d Cir. 2006) ...............................................................41, 42

*In re Project Orange Assocs., LLC*,
431 B.R. 363 (Bankr. S.D.N.Y. 2010) ...................................................34

*In re Quigley Co., Inc.*,
No. 04-15739 SMB, 2009 WL 9034027 (Bankr. S.D.N.Y. Apr. 24,
2009) ...........................................................................................5

*In re Universal Bldg. Prod.*,
486 B.R. 650 (Bankr. D. Del. 2010) .....................................................50

*In re UNR Indus., Inc.*,
46 B.R. 671 (Bankr. N.D. Ill. 1985) .....................................................7

*Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*,
2011 WL 4458779 (M.D. Pa. Sept. 23, 2011) ......................................50

*Matter of Status Game Corp.*,
102 B.R. 19 (Bankr. D. Conn. 1989) ....................................................37

*McDonald v. Hammons*,
936 F. Supp. 86 (E.D.N.Y. 1996) .........................................................41

*Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*,
No. BR 00-22876, 2015 WL 4773425 (W.D. Pa. Aug. 12, 2015) .............8, 9, 10

*Palumbo v. Tele-Commc'ns, Inc.*,
157 F.R.D. 120 (D.D.C. 1994) ............................................................42

*Pennwalt Corp. v. Plough, Inc.*,
85 F.R.D. 264 (D. Del. 1980) ..............................................................30

*Richardson v. Hamilton Int'l Corp.*,
333 F. Supp. 1049 (E.D. Pa. 1971), *aff'd*, 469 F.2d 1382 (3d Cir.
1972) ..........................................................................................27, 28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rome v. Braunstein*,
  19 F.3d 54 (1st Cir. 1994)....................................................................33

*Singleton v. Wulff*,
  428 U.S. 106 (1976)...........................................................................47

**Statutes**

11 U.S.C. § 101(14) .............................................................................32

11 U.S.C. § 327(c) ...............................................................................32

11 U.S.C. § 524(g) .................................................................................5

11 U.S.C. § 524(g)(4)(B)(i) ...................................................................6

28 U.S.C. § 157(a) .................................................................................2

28 U.S.C. § 158(a)(1)-(3)........................................................................2

28 U.S.C. § 158(d) .................................................................................3

28 U.S.C. § 1334(a) ...............................................................................2

28 U.S.C. § (b) .......................................................................................2

W. Va. Code § 55-12A-5(d) ..................................................................41

**Other Authorities**

1 COLLIER ON BANKRUPTCY, § 8.03[1] (15th ed. 2002) .........................34

3 COLLIER ON BANKRUPTCY § 327.01 (16th ed. 2020) ...........................32

3 COLLIER ON BANKRUPTCY § 328.05[2] ................................................35

H.R. Rep. No. 103-835, at 41, 1994 U.S.C.C.A.N. 3340, 3349 (1994) ...................6

Mark D. Plevin, Leslie A. Epley, Clifton S. Elgarten, *The Future
  Claims Representative in Prepackaged Asbestos Bankruptcies:
  Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for
  Burdened Bankruptcy Courts*, 62 N.Y.U. ANN. SURV. AM. L. 271,
  320 (2006) ......................................................................................5, 40

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

National Bankruptcy Review Commission, *Final Report* (Oct. 20, 1997), *reprinted in* COLLIER ON BANKRUPTCY, app. pt. 44 .................................7

Robin E. Phelan & John D. Penn, *Bankruptcy Ethics, an Oxymoron*, 5 AM. BANKR. INST. L. REV. 1, 27 (1997)...............................................35

**Rules**

D. Del. L.R. 83.6(d) ............................................................................25

Del. Bankr. L.R. 1001–1(b) ................................................................25

DEL. LAWYERS' RULES OF PRO. CONDUCT R. 1.7(b)(4)...........................43

Del. RPC 1.7(a)(1)-(2) .......................................................................25

N.J. Rules Prof'l Conduct R. 1.7 ........................................................29

**Treatises**

Model R. Prof'l Conduct 1.6, cmt. [3].................................................46

Model R. Prof'l Conduct 1.7, cmt. [19]...............................................47

Model R. Prof'l Conduct 1.7, cmt. [2].................................................46

Model R. Prof'l Conduct 1.7, cmt. [6].................................................25

Model R. Prof'l Conduct 1.7, cmt. [8].................................................26

## PRELIMINARY STATEMENT

This appeal concerns whether a Future Claimants Representative ("FCR") in a mass-tort bankruptcy—who is charged with representing unidentified individuals who in the future will have a claim against a bankruptcy trust—may waive a concurrent conflict of interest on behalf of those unknown claimants. The answer is no. The FCR, James Patton, and his law firm simultaneously represent (i) future claimants in the *Imerys* bankruptcy who seek Appellants' insurance proceeds, and (ii) certain Appellant Insurers in the *Warren Pumps*' insurance coverage litigation. Both are active cases involving insurance coverage for asbestos-related personal-injury claims.

This is a textbook conflict of interest under Rule 1.7 of the Rules of Professional Conduct as Patton's and Young Conaway's dual representations make them adverse to Appellants and future claimants. That conflict requires disqualification. Similarly, under this Court's precedents interpreting Section 327, concurrent conflicts of interest are *per se* disqualifying. The courts below erred in concluding that Patton had no disqualifying concurrent conflict of interest.

The courts below also erred in holding that such a conflict can be waived. If anything, the standards for scrutinizing the retention and conflicts of an FCR should be heightened—as the Bankruptcy Court and District Court both agreed. The FCR exists to represent individuals who cannot represent themselves, very

1

much like a guardian *ad litem* appointed to represent the interests of a child or incompetent individual.  It makes no sense to say that such a fiduciary can waive his or her own conflicts of interests on behalf of claimants who need a court-appointed representative to protect their best interests.

The Bankruptcy Court suggested an ethical wall should be established to resolve the conflicts here.  But that remedy does not fix the problem.  And the District Court misread the lone American Bar Association opinion on which it relied, and ignored case law holding that a concurrent conflict of interest exists where a lawyer simultaneously represents an insurer in coverage litigation and the insured tort claimants seeking coverage from that insurer.   The District Court also incorrectly held that Appellants had forfeited their objection to the conflict.  Indeed, the District Court itself acknowledged that Appellants raised the argument below, to which the FCR responded.

For these and the other reasons elaborated in this brief, the order appointing Patton as FCR and Young Conaway as his counsel should be reversed.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction over this matter under 28 U.S.C. §§ 157(a)-(b) and 1334(a).  The district court had jurisdiction over this matter under 28 U.S.C. § 158(a)(1)-(3).  The district court issued a final decision on November 24, 2020, JA7–8, and Appellants timely appealed on December 8, 2020.  JA1.

This Court has jurisdiction over appeals from final judgments entered under section 158(a).  28 U.S.C. § 158(d).

## STATEMENT OF ISSUES

1. Whether the district court properly found Appellants waived their objection as to the conflict in the bankruptcy court even though the bankruptcy court made no such finding and addressed the objection on the merits. *See* JA14–15.

2. Whether Young Conaway Stargatt & Taylor, LLP's ("Young Conaway") representation of the insurers in *Warren Pumps v. Century Indemnity Co.*, Consol. C.A. No. N10C-06-141 PRW (Sup. Ct. Del.) ("*Warren Pumps*") and its appointment as FCR in this bankruptcy creates a concurrent conflict of interest. *See* JA16–18; JA35–42; JA944–46; Appellants' Opening Br. on Appeal to D. Ct. at 29–31, No. 19-cv-1120-MN (Oct. 16, 2019), Dkt. 13.

3. Whether that concurrent conflict of interest is *per se* disqualifying or subject to waiver, including by absent future claimants the FCR represents.  *See* JA18; JA35–42; JA941, 952–53; Appellants' Opening Br. on Appeal to D. Ct. at 9.

4. Whether Appellants waived the concurrent conflict of interest on *Warren Pumps*. *See* JA19; JA37–42; JA946–50; Appellants' Opening Br. on Appeal to D. Ct. at 37–40

5. Whether Patton's inadequate disclosures on several issues should have been

independently disqualifying.  JA16, 20; JA35–42, JA954–57; Appellants' Opening

Br. on Appeal to D. Ct. at 43–45.

## STATEMENT OF RELATED CASES

This case has not been before this Court previously, and Appellants are not

aware of any other case or proceeding related in any way that is completed,

pending, or about to be presented before this Court or any other court or agency,

state or federal.

## STATEMENT OF THE CASE

### I.   THE FCR PLAYS A CRITICAL ROLE IN ASBESTOS BANKRUPTCIES.

Debtors Imerys Talc America, Inc., Imerys Talc. Vermont, Inc., and Imerys

Talc Canada Inc. (collectively "Debtors") are companies that, among other things,

distribute talc to third-party manufacturers for use in their products.  JA55 ¶¶ 6–7.

Debtors have been sued in thousands of lawsuits alleging they suffer from

asbestos-related diseases caused by exposure to Debtors' talc.  JA55–56 ¶ 8–9.

Debtors invoked Chapter 11 bankruptcy in response.  Debtors' stated goal is to

confirm a plan of reorganization that resolves their historic talc-related liabilities.

The FCR will play a critical role in this process.  In a traditional Chapter 11

case, current creditors and equity holders are the only parties whose rights will be

directly affected.  This case seeks a channeling injunction, which will direct—or

"channel"—the rights of future claimants who have not yet manifested harm from

the Debtors' products, and who may not even be aware of these bankruptcy cases,

to a litigation trust funded by participating parties.  For those victims—who may

not show signs of illness for years or even decades after the plan is confirmed—the

channeling injunction will cut off any right they may have to recover against the

reorganized Debtors, the Debtors' insurers, and certain related parties and will

force them to look exclusively to a post-bankruptcy trust for compensation.  *See In*

*re Federal-Mogul Global Inc.*, 674 F.3d 355, 357 (3d Cir. 2012) (describing the

purpose and function of channeling injunctions under 11 U.S.C. § 524(g)).

As courts and commentators have observed, the interests of future claimants

conflict with those of both present claimants and the debtor on the appropriate

level of safeguards against invalid or fraudulent claims.[1]  So long as the trust funds

will not exhaust before their own claims are paid, first-in-line present claimants are

indifferent to whether fraudulent claims are allowed—and may object to an overly

vigilant claims review process that would delay or reduce present claimants'

distributions.  By contrast, future claimants have a vital interest in ensuring that a

debtors' plan of reorganization contains strong protections against fraud and

mismanagement to prevent non-meritorious claims from exhausting the trust

---

[1]  *In re Quigley Co., Inc.,* No. 04-15739 SMB, 2009 WL 9034027, at *5 (Bankr. S.D.N.Y. Apr. 24, 2009); Mark D. Plevin, Leslie A. Epley, Clifton S. Elgarten, *The Future Claims Representative in Prepackaged Asbestos Bankruptcies: Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for Burdened Bankruptcy Courts*, 62 N.Y.U. ANN. SURV. AM. L. 271, 320 (2006).

before all valid future claims are paid.  Future claimants therefore bear a

disproportionate share of the harm if the trust is depleted through fraud or

mismanagement.

Congress created the FCR position in 1994 to address those conflicts and

protect the due process rights of future asbestos claimants by ensuring that they

would receive as effective and independent representation as the current tort

claimants.  *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §111, 108

Stat. 4106, 4113–17.  An FCR serves as a "legal representative for the purpose of

protecting the rights of persons that might subsequently assert demands" against

the trust.  *See* 11 U.S.C. § 524(g)(4)(B)(i).

The FCR is endowed with powers similar to the representative for the

current tort claimants (known as the "TCC") with unique similarities to the

guardian *ad-litem* system.  The FCR's powers originated in the pioneering asbestos

bankruptcy cases on which Congress relied when drafting § 524(g).[2]  In *In re*

*Johns-Manville Corp.*, 68 B.R. 618, 626–27 (Bankr. S.D.N.Y. 1986), Judge

Lifland "endowed [the FCR] upon his appointment with the full panoply of

statutory rights and duties of representation available to an official committee

---

[2]  *See* H.R. Rep. No. 103-835, at 41, 1994 U.S.C.C.A.N. 3340, 3349 (1994)
(committee statement supporting enactment of § 524(g) on ground that it
"strengthen[s] the *Manville* and *UNR* trust/injunction mechanisms" and other
mechanisms "that meet the same kind of high standards with respect to regard
for the rights of claimants, present and future").

under the Code."[3]  And in *UNR Industries*, the court decreed that the FCR would "exercise the powers and responsibilities of an official creditors' committee," subject to the limitation that his "primary task" would be "to advise" future claimants of their interest in the proceedings.[4]

During the pilot FCR system initiated in *Johns-Manville*, the court there characterized the FCR's role as that of a "legal representative or guardian *ad-litem* acting as a fiduciary for [future claimants' interests]," "binding unknown parties in interest to the outcome of judicial procedures in which they have been represented by a trustee." *In re Johns-Manville Corp.*, 68 B.R. at 627.  More recently, in 2019, the bankruptcy court in *In re Fairbanks* concluded that "a future claimants' representative effectively undertakes the role of a guardian *ad-litem*," and that "[a]ppointment of an FCR thus involves the same considerations as appointment of a guardian *ad-litem*." *In re Fairbanks Co.*, 601 B.R. 831, 841 (Bankr. N.D. Ga. 2019).  Knowledgeable observers of mass tort bankruptcy law agree that the FCR serves as a guardian *ad litem* for future claimants.[5]

---

[3]   *Aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[4]   *In re UNR Indus., Inc.*, 46 B.R. 671, 675–76 (Bankr. N.D. Ill. 1985); *cf. In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985) (recognizing *Johns-Manville* and *UNR*, and reversing denial of motion to appoint guardian ad litem to represent future claimants' interests, recognizing that "future claimants require their own representative" as "parties in interest" to bankruptcy).

[5]   *See* National Bankruptcy Review Commission, *Final Report* (Oct. 20, 1997), *reprinted in* COLLIER ON BANKRUPTCY, app. pt. 44 (16th ed. 2020) (Lexis,

Despite the FCR's obligation to root out fraudulent claims that deplete future claimants' payouts, manipulative practices and fraud are "widespread and significant" in mass-tort bankruptcy trusts.  *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 94 (Bankr. W.D.N.C. 2014).  This concerns not only debtor defendants, but future asbestos claimants: "Higher trust payments to current plaintiffs mean fewer trust resources for future plaintiffs," raising the concern that the "lack of coordination between trusts and the tort system advantages today's plaintiffs relative to future plaintiffs."[6]

Several courts have recognized that the bankruptcy trust system is easily manipulated and "infected" with fraud.[7]  In *In re Garlock Sealing Technologies, LLC*, the court found that plaintiffs had withheld exposure evidence in "each and every one" of the pre-petition asbestos claims that it had sampled, making it

---

database updated Dec. 2020) (recognizing that, "in asbestos bankruptcy cases involving future liabilities," "the representative [is] considered a guardian *ad litem*" in light of "the significant responsibility that accompanies the representation of holders of inchoate claims"); *see* Plevin, *supra* note 1, at 320 ("In judging the independence of a prospective FCR, the court should employ the strict standards customarily applied to court officers and fiduciaries acting on behalf of an absent party. The FCR acts as a guardian *ad litem* for future claimants.").

[6]  *See* Lloyd Dixon & Geoffrey McGovern, RAND Corp., Asbestos Bankruptcy Trusts and Tort Compensation 1 (2011), https://www.rand.org/content/dam/rand/pubs/monographs/2011/RAND_MG1104.pdf. (last visited Mar. 10, 2021).

[7]  *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 82 (Bankr. W.D.N.C. 2014).

possible for current tort claimants to seek payments from dozens of trusts, even

after averring that the current tort claimants' injuries were caused by one debtor

company alone. 504 B.R. 71, 84 (Bankr. W.D.N.C. 2014); *Mt. McKinley Ins. Co.*

*v. Pittsburgh Corning Corp.*, No. BR 00-22876, 2015 WL 4773425, at \*5 (W.D.

Pa. Aug. 12, 2015) ("The evidence uncovered in the *Garlock* case arguably

demonstrates that asbestos plaintiffs' law firms acted fraudulently or at least

unethically in pursuing asbestos claims in the tort system and the asbestos trust

system.").

These are not isolated instances. According to the U.S. Department of

Justice, in a 10-year study of the 26 largest trusts—comprising 99% of all asbestos

trust payments—fraudulent claims represented a significant share of payouts:

> persons who did not have malignant conditions accounted for 86
> percent of all claims made to the trusts and 27 percent of all trust
> payments, notwithstanding that these claimants usually would not
> have been compensated at all for those injuries in the tort system.[8]

The Department of Justice points out that, in Delaware, plaintiffs' firms have

withheld evidence of tort claimants' payouts from multiple mass-tort trusts,

---

[8]  Statement of Interest on Behalf of the United States of America Regarding
Estimation of Asbestos Claims ("Department of Justice Statement") 5, *In re
Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Dec. 28, 2020) (citing
Lloyd Dixon, Geoffrey McGovern, & Amy Coombe, RAND Corp., *Asbestos
Bankruptcy Trusts: an Overview of Trust Structure and Activity with Detailed
Reports on the Largest Trusts* xi (2010),
https://www.rand.org/pubs/technical_reports/TR872.html).

violating disclosure requirements:

> [I]n describing her experience presiding over asbestos litigation, a
> former Delaware Superior Court judge reported that in one typical
> case, despite a local standing order for asbestos cases requiring
> "mandatory disclosure requirements for all bankruptcy trust claims,"
> plaintiffs' counsel repeatedly "assured the court that no disclosure was
> required because no such claims had been filed." *Id.* at 1189-90. Yet
> "the day before trial, defense counsel learned that a total of twenty
> bankruptcy claims had been submitted to various trusts and that
> significant sums of money had already been received by the"
> plaintiffs. *Id*. at 1192.[9]

It is the FCR's duty to root out this fraud.  But conflicts of interest plague the FCR

system, and lack of disclosure on entangling conflicts of interest obstructs

resolution.

The FCR typically participates in the negotiation of the plan of

reorganization and is supposed to object to any plan that is unfair to future

claimants.  The FCR is not supposed to be an adjunct to a debtor or to a committee

of present claimants.  Rather, the FCR is supposed to be an independent fiduciary

expected to represent interests that are equally adverse both to a debtor and to all

current claimants.  *In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985)

("[B]ecause of the adverse interests of the other parties, it would appear that future

claimants require their own representative").

An unconflicted FCR that is loyal to the future claimants only and that will

---

[9]   Department of Justice Statement at 7 (citing *In re Asbestos Litig.: Ltd. to
Montgomery*, 09C-11-217 ASB (Del. Super. Ct. Nov. 7, 2011).

challenge the current claimants, the Debtors, and indeed all interested parties—

including insurers—is thus vital to the creation of a trust.

## II.   IMERYS RETAINS THE FCR LONG BEFORE THE BANKRUPTCY, AND THE COURT THEN APPROVES HIS RETENTION DESPITE HIS CONFLICTS.

### A.   Imerys Selected Patton Eight Months Before Filing For Bankruptcy.

Eight months before filing for bankruptcy, Imerys (the companies that would

later become the Debtors) hired Patton to serve as FCR.  Debtors interviewed him,

discussed compensation, and hired him with the expectation that he would

negotiate a plan.

In an engagement letter dated September 25, 2018 (the "Prepetition FCR

Agreement"), eight months before this bankruptcy was filed, Patton set forth the

terms of his engagement by Imerys and Debtors waived any conflicts.  JA182–87.

Patton retained his firm, Young Conaway, as his legal counsel.  *See generally*

JA132 ¶ 10. The Prepetition FCR Agreement also prohibited Patton or Young

Conaway from disclosing their retention by the Debtors' pre-petition—or their

work in contemplation of bankruptcy—to their clients, Appellants, or any of

Young Conaway's other insurer clients.  *See* JA186 ¶ 9.  James Patton and Young

Conaway were thus prohibited from disclosing their conflict of interest to

Appellants.

On February 27, 2019, the Debtors filed the Motion to Appoint James Patton

as FCR.  *See* JA132.  Patton currently serves as FCR for future asbestos claimants in five bankruptcy cases.  JA154 ¶ 3.  Patton also declared that Young Conaway has previously represented the FCR in over twenty asbestos cases JA154–55 ¶ 4(a); and several matters in which Young Conaway represents the FCR in connection with asbestos settlement trusts.  JA155 ¶ 4(b), (c).  The Office of the U.S. Trustee pointed out that these cases were notable for the absence of anti-fraud protections and of safeguards against mismanagement and inflated professional fees built into the trusts.  JA364 ¶ 7.  Far from providing the strong and independent voice that Congress intended, in many bankruptcy cases the FCRs have done little to challenge plans that unfairly favored present claimants and debtors at the expense of future claimants.[10]  Notably, in *ACandS*—a bankruptcy case in which Young Conaway represented the FCR—the FCR not only failed to object to the plan provisions that the bankruptcy court criticized as unfair to future claimants (among other disfavored parties), but he even joined the debtors and the present claimants' committee in appealing the bankruptcy court's ruling.[11]  JA373 ¶ 23.

---

[10]  *See, e.g., In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004) (denying, as fundamentally unfair, approval of reorganization plan whose terms reflected "unbridled dominance" of certain present claimants' attorneys whose clients were paid in full at the expense of other creditors, including future claimants).

[11]  *See ACandS Inc. v. Travelers Casualty*, No. 04-cv-00123-JJF (D. Del.), Dkt. 1, FCR's Notice of Appeal.

On April 10, 2019, the U.S. Trustee here attempted to propose a process for reviewing other candidates for the FCR position.  JA360.  Appellants joined in asking that other candidates be considered.  JA655 at 7:4–5, 17–20.  On April 26, 2019, this request was rebuffed by the Court due to lack of time.  JA823–24 at 175:16–176:21.  Hence, no other candidates were considered other than the one picked by the Debtors.

### B.    Young Conaway Represents Certain Appellants in the Substantially Related *Warren Pumps'* Matter.

Debtors and future claimants—the latter of which are represented by Patton and his firm Young Conaway—are seeking insurance coverage from Appellants.  At the same time, certain Appellants are currently represented by Young Conaway in similar, active insurance coverage litigation for asbestos-related personal-injury tort claims ("*Warren Pumps*") in Delaware.[12]

For seven years, Young Conaway has advocated positions in *Warren Pumps* that are adverse to Debtors and the future claimants' interests, and is party to confidential and privileged information about these issues.  When Patton and Young Conaway commenced their representation of Future Claimants in September 2018, Patton and his firm became "directly adverse" to certain

---

[12]    Since 2014, Young Conaway has represented Continental Insurance Company ("Continental") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union").  Only Continental and National Union are parties to this appeal.  *See* JA53; JA975.

Appellants who are current clients of the Young Conaway firm. This raises a

further conflict with the Debtors because Young Conaway is also adverse to

Debtors' interest in seeking insurance proceeds from Young Conaway's clients.

And if that were not enough, Appellant Insurers have contingent claims against

Debtors, having submitted proofs of claim on January 9, 2020.

In the *Warren Pumps* case, for which Young Conaway represents

Appellants, the issues include disputes over rights to coverage for asbestos claims.

JA906–22. In both cases, (i) parties are negotiating whether the same or similar

form insurance language covers claims for asbestos-related personal-injury tort

claims, (ii) the same claims managers work on both *Warren* and *Imerys* because

both cases involve the same coverage issues for asbestos tort claims (iii) more than

one corporate entity claims rights to insurance policy proceeds, (iv) insurers are

litigating contribution rights among insurers, (v) the parties are litigating whether

policies owe defense obligations and to whom and under what limitations and

conditions, and (vi) the parties dispute exhaustion of underlying insurance policies,

among other issues. JA906–22.

### C.    Appellants Object to Mr. Patton's Appointment As FCR.

Patton's initial disclosure did not disclose his representation of Continental

Insurance Company, which Debtors and the FCR assert owes insurance proceeds

to the Estate. JA157. And although Patton disclosed his firm's representation of

certain other insurers in coverage matters, he incorrectly described the matter as involving "environmental liabilities" instead of as mass-tort litigation, and did not provide the name of the mass-tort insurance-coverage litigation that gives rise to the conflict at issue here, *Warren Pumps*.[13]  Appellants objected to Patton's appointment as FCR because, among other things, his disclosures were inadequate. JA226–27.

The bankruptcy court then held a retention hearing on April 26, 2019.  At that hearing, Patton revealed for the first time that Young Conaway represents Appellants in "active litigation" involving asbestos-related insurance coverage matters for personal-injury tort claims.[14]  He also revealed that he had obtained prospective waivers from Appellants.[15]  Appellants immediately objected at the hearing to the concurrent conflict of interest, explaining that Patton and Young

---

[13]  JA158 ¶13; *see also* JA750 at 102:7-12 (Mr. Schiavoni: ". . . And you're representing the National Union Fire Insurance Company in matters concerning insurance coverage for asbestos."  Patton: "I believe it's environmental more broadly, but --" Mr. Schiavoni: "Environmental liabilities including asbestos claims?"  Patton: "It could be.").

[14]  *See* JA749–50 at 101:2-102:2 (Mr. Schiavoni: "And did that conflict search show that you represented National Union Fire Insurance Company?"  Patton: "It may have." . . . Mr. Schiavoni: "Did it show that you represented Continental Casualty Insurance Company?" Patton: "It may have." . . . Mr. Schiavoni: ". . . Did you obtain a waiver from National Union Fire Insurance Company?" Patton: "I believe the answer is yes, too, it was an active litigation. Yes." Mr. Schiavoni: "And you have one also from Continental Casualty?" Patton: "I believe we do.").

[15]  *See* JA749–50 at 101:2-102:2.

Conaway had an unwaivable "irreconcilable" conflict because in serving as FCR
for future claimants with asbestos-related diseases he would be required to take
positions directly adverse to the positions he must take in the asbestos-related
*Warren Pumps* coverage matter for Continental and National Union.  JA830–31 at
182:18–183:11.

During the same testimony, Patton acknowledged that his firm was soliciting
current personal-injury claimants whose injuries arose out of Johnson & Johnson
talc.  JA752–53 at 104:4–17, 105:12–15.  His firm's website stated that the firm
represented talc claimants: "At Young Conaway Stargatt & Taylor, LLP, our injury
lawyers work with people across Delaware and beyond who have been harmed by
all types of dangerous and defective products, including talcum powder."  JA752–
53 at 104:4–17, 105:12–15; JA853–54.  Appellants objected to this conflict as
well.  *See* JA944, 956–57.  Current claimants possess interests that are directly
adverse to future claimants given that the two different groups are each
independently vying for the same finite resource:  insurance proceeds.

On May 8, 2019, the Bankruptcy Court issued an order approving Patton's
retention as FCR.  The court did not analyze the *Warren Pumps* conflict but
indicated that Young Conaway should erect an ethical wall: "it would seem
prudent for Young Conaway to establish an ethical wall between this matter and
matters in which they represent insurance companies in coverage litigation in

asbestos related matters." JA32. The ethical wall was erected *8 months after* the conflict arose in September of 2018.

While the Court ordered Patton to submit a supplemental declaration detailing whether Young Conaway was currently representing current talc claimants, Patton did not disclose whether it represented those clients in the past. Young Conway simply responded: "Neither Young Conaway nor I represent any clients who are asserting claims based on exposure to talc." JA898 ¶ 4. There was no explanation for why the Young Conaway website stated the exact opposite only one month before. JA853–54. The Bankruptcy Court's final decision accepted Patton's declaration without further investigation or questioning, characterizing the statement as "definitive." JA36. The Court's concerns were well-founded, but not investigated. And the Court refused to entertain Appellants' motions to compel discovery served in March, further limiting any investigation. JA26; JA 47.

### D.   Patton Supplements His Disclosures About The *Warren Pumps* Conflicts, And Appellants' Objection.

In its initial ruling, the Bankruptcy Court also ordered Patton to make additional disclosures regarding the *Warren Pumps* issue. JA32. On May 13, 2019, Patton submitted a Supplemental Declaration including an "exemplar" of a prospective conflict waiver from what he describes as Young Conaway's engagement letters with insurance companies. JA898 ¶ 7. Notably, the quoted provision expressly carves out any engagement involving "the same matter or a

matter substantially related." JA898–99 ¶ 7.  Debtors argued that Appellants prospectively waived conflicts here in a September 2014 letter to retain Young Conaway in the *Warren Pumps* matter.  The standard-form waiver provision that the Bankruptcy Court reviewed provided that Young Conaway "may represent other clients (i) in workout, bankruptcy and insolvency proceedings, and (ii) in connection with trusts established pursuant to section 524(g) of the Bankruptcy Code . . . ***provided that***:  (i) the Firm is not then representing and has not previously represented You ***in the same matter or a matter substantially related to the same matter,*** and (ii) the representation of the other client is in accordance with the applicable ethical and professional rules governing the conduct of lawyers."[16]

And on May 17, 2019, Patton filed another Supplemental Declaration, disclosing further information about the *Warren Pumps* conflict.  JA902–03 ¶¶ 5–6.  That declaration stated that Young Conaway had conferred with its General Counsel and had just closed two of its insurance coverage matters for which the same prospective waiver had been executed as in *Warren Pumps* where Young Conaway represented insurers in insurance coverage litigation.  JA902–03 ¶¶ 5–6.  For the *Warren Pumps* matter for which Young Conaway still represented Appellants, Young Conaway belatedly established an ethical wall.  JA899 ¶ 8.

---

[16]  *See* JA898–99 ¶ 7; JA38–39, discussing *in camera* review of Young Conaway retention letter; *see also* JA902–03 ¶ 5.

In response to these supplemental declarations, Appellants filed a Supplemental Objection on May 17, 2019, arguing that Patton's role as FCR is "directly adverse" to Young Conaway's simultaneous representation of Appellants in *Warren Pumps*, because the two matters are "substantially related." JA944–46. Specifically, in both *Imerys* and *Warren Pumps*, (i) the insureds seek insurance coverage for asbestos-related personal-injury claims, (ii) the parties are negotiating whether the same or similar form insurance language covers claims for asbestos-related personal-injury tort claims, (iii) the same claims managers work on both *Warren* and *Imerys* because both cases involve the same coverage issues for asbestos tort claims (iv) more than one corporate entity claims rights to insurance policy proceeds, (v) insurers are litigating contribution rights among insurers, (vi) the parties are litigating whether policies owe defense obligations and to whom and under what limitations and conditions, and (vii) the parties dispute exhaustion of underlying insurance policies, among other issues. JA906–22.  Young Conaway has served discovery on its own clients in Imerys related to insurance coverage issues.[17]  Appellants also argued that the prospective waiver should not be effective because Young Conaway never disclosed any information to allow Appellants to

---

[17]  JA1387, February 15, 2021 Notice of Service of Future Claimants' Representative's First Set of Interrogatories and Requests for Production on the Plan Objecting Insurers (Serving interrogatories and requests for production on Appellants, Continental and National Union).

19

provide a knowing and intentional waiver.  JA946–48.  In any event, Appellants argued, this type of actual, concurrent conflict of interest should be treated as *per se* disqualifying and not subject to waiver in the context of an FCR appointment. JA952–53.

The FCR filed a response to Appellants' Supplemental Objection on the *Warren* conflict.  JA960.  Young Conaway then filed an additional supplemental declaration on June 5, 2019, reiterating that Young Conaway established an ethical wall between the *Warren* matter and the *Imerys* matter on May 8, 2019.  JA984–85 ¶ 8.

### E.    The Bankruptcy Court's Decision

On May 31, 2019, after considering the Supplemental Disclosures and Supplemental Objection, the Bankruptcy Court approved Patton's appointment. While the Bankruptcy Court again did not address whether Young Conaway's simultaneous representation of the FCR and Appellants gave rise to a concurrent conflict of interest, it implicitly assumed such a conflict existed and proceeded to hold that the 2014 prospective waiver was effective and governed the alleged conflict.  The Bankruptcy Court reasoned that, even if the issues in the Imerys bankruptcy and *Warren Pumps* are "substantially related," "these general issues could arise in every mass tort case and thus would eviscerate the very waiver given."  JA39.  The Bankruptcy Court also found that Appellants had enough

information to appreciate the prospective waiver because they are sophisticated parties, JA38, JA41, and that the waiver letter was not general because it references workout, bankruptcy and insolvency proceedings, and section 524(g) trusts.  JA41.

The Bankruptcy Court never addressed whether the FCR or Young Conaway could waive the conflict on behalf of the future claimants.

## F.    The District Court's Decision

Appellants then sought review in the district court, arguing that the Bankruptcy Court had failed to analyze whether the FCR could waive the conflict as to its clients on the other side of the conflict, i.e., the future claimants, and that, in any event, the prospective waiver did not apply.

Without holding a hearing, the district court affirmed the bankruptcy court's order.  Even though the bankruptcy court had considered Appellants' *Warren Pumps*-based objection on its merits, the district court asserted that the issue was not properly preserved.  JA14.  The court's only explanation was that Appellants had not raised the issue in their initial objection, ignoring that Appellants raised the issue promptly after Patton belatedly disclosed his firm's *Warren Pumps* representation at the hearing and in his supplemental disclosure.  JA14.

Turning to the merits, the district court asserted that there was no concurrent conflict of interest, relying on an American Bar Association opinion addressing the general situation where a lawyer represents an insurer in one matter and separately

represents a plaintiff suing one of the insurer's insureds. JA16. The district court next stated that even if there were a concurrent conflict, it believed that conflict could be waived and that Appellants had in fact prospectively waived this conflict in the 2014 letters. JA17–18. Like the Bankruptcy Court, the District Court did not address whether the FCR or Young Conaway could waive the conflict on behalf of future claimants.

## SUMMARY OF ARGUMENT

I. The District Court erred in concluding that James Patton and his firm, Young Conaway, had no concurrent conflict of interest. Patton and Young Conaway simultaneously represent (i) future claimants in *Imerys* who seek Appellants' insurance proceeds, and (ii) certain Appellant Insurers in *Warren Pumps*' insurance coverage litigation. Both are active cases involving insurance coverage for asbestos-related personal-injury claims. This is a textbook conflict of interest under Rule 1.7 of the Rules of Professional Conduct as James Patton's and Young Conaway's entangling conflicts make them adverse to Appellants, future claimants, and Debtors. The District Court's contrary conclusion misinterpreted a single American Bar Association opinion when holding the opposite, which is an error of law.

II. That concurrent conflict cannot be waived. Under this Court's precedent, concurrent conflicts of interest are *per se* disqualifying and cannot be

waived under the Section 327 "disinterested" standard or the stricter guardian *ad-litem* standard that both courts below agreed applies here.  Indeed, a higher fiduciary standard should apply to FCRs, as the Bankruptcy Court and District Court both agreed.  The FCR position was created specifically to protect the rights of future claimants who cannot speak for themselves.  Even when conflicts are waivable, the conflicted law firm must secure the consent of *both affected parties*, which cannot and has not happened here.

III.  And Appellant Insurers did not consent to Patton and Young Conaway's conflict.  This case falls within the conflict waiver's exception for cases "substantially related" to the *Warren Pumps* litigation.

IV. Contrary to the District Court, Appellants preserved their objection to the *Warren Pumps*' conflict that arose at the FCR's retention hearing.   Indeed, the Bankruptcy Court ordered supplemental disclosures on the subject, Appellants objected, Appellees responded, and the Bankruptcy Court addressed the issue on the merits.  The District Court cited no authority for the proposition that an issue that was both raised and ruled on below is somehow waived.

V.  Finally, the Bankruptcy Court's order must at a minimum be reversed or vacated due to Patton's inadequate disclosures.  Even after Patton supplemented his initial, inadequate disclosures, the Bankruptcy Court abused its discretion by refusing to permit the Appellant Insurers to conduct discovery about whether

23

Young Conaway represents, or previously represented, talc claimants.

## STANDARD OF REVIEW

"Because the District Court in this case sat as an appellate court reviewing a final order of the Bankruptcy Court," this Court's "review of [the District Court's] determination is plenary." *In re O'Brien Envtl. Energy Corp.*, 188 F.3d 116, 122 (3d Cir. 1999). The District Court's determination that Appellants did not preserve their objection to the *Warren Pumps* conflict, and that no concurrent conflict existed, is therefore owed no deference.

This Court reviews the Bankruptcy Court's "legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *Id.* "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *Id.* "In determining whether an error exists, we review *de novo* the District Court's application of the law to the facts." *Id.*

The Bankruptcy Court's appointment of a legal representative is reviewed for abuse of discretion. *In re BH & P, Inc.*, 949 F.2d 1300, 1306 (3d Cir. 1991). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of the law to the facts." *O'Brien Evntl.*, 188 F.3d at 122. The question whether an FCR's concurrent conflicts can be waived and the interpretation of the *Warren Pumps* waiver are both legal questions reviewed de

24

novo.

## ARGUMENT

I.  **PATTON HAS A DISQUALIFYING CONFLICT
    WITH RESPECT TO FUTURE CLAIMANTS
    AND APPELLANTS UNDER RULE 1.7.**

   A.  **Young Conaway's Concurrent Representation of Future
       Claimants And Certain Appellants Creates An Actual,
       Concurrent Conflict Of Interest Under Rule 1.7.**

Rule 1.7(a) of the Model Rules and Delaware's Rules of Professional

Conduct forbids representation in two situations, both of which apply here: (i) if

that representation will be "directly adverse" to another client or (ii) if there is "a

significant risk that the representation of one or more clients will be 'materially

limited' by the lawyer's responsibilities to another client, a former client or a third

person or by a personal interest of the lawyer."[18]  That rule—that "absent consent,

a lawyer may not act as an advocate in one matter against a person the lawyer

represents in some other matter"—applies even when the "matters are wholly

unrelated."[19] There is no question that the Rules of Professional Conduct, including

---

[18]  DEL. LAWYERS' RULES OF PRO. CONDUCT r. 1.7(a)(1)-(2). The Model Rules of
Professional Conduct of the American Bar Association (the "Model Rules")
govern the practice of law before this Court. Del. Bankr. L.R. 1001–1(b)
(adopting the Local Rules of Civil Practice and Procedure of the United States
District Court for the District of Delaware); D. Del. L.R. 83.6(d) (incorporating
the Model Rules).

[19]  Model R. Prof'l Conduct 1.7, cmt. [6]; *Glueck v. Jonathan Logan, Inc.*, 653
F.2d 746, 749 (2d Cir.1981) ("[D]isqualification will ordinarily be required
whenever the subject matter of the suit is sufficiently related to the scope of the

Rule 1.7, apply here under this Court's precedent,[20] and Patton's firm also agreed to abide by the Rules of Professional Conduct in the engagement letter with Appellants.  JA898.

Patton, whose law partners *currently* represent Appellants in the *Warren Pumps* case, is adverse to these same insurers in this case. This constitutes adversity and is thus a textbook breach of RPC 1.7.  Adversity does not mean suing your client in the same case.  Insurers are adverse to future claimants in the same way the insurers are adverse to current claimants:[21] the Debtors and future claimants want the insurers to pay money into the estate while Patton's job is to maximize that recovery in this bankruptcy.  That means he is trying to get his firm's clients (Appellants) to pay money to Debtors and future claimants.  What is more, Appellants' arguments in favor of not paying as much as Patton may request overlap with the arguments they and Young Conaway raise in *Warren Pumps*—where Patton's law firm is at this moment counsel to some of the Appellants.  That

---

matters on which [the] firm represent[ed] [the one client so] as to create a
realistic risk ... that unfair advantage will be taken of the [other client].").

[20]  *In re Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005).

[21]  *In re Mid-Valley, Inc.*, 305 B.R. 425, 433 (Bankr. W.D. Pa. 2004) ("[T]he
certain insurers' interests are adverse to *all* asbestos creditors' interests, future
and present.").

presents a real risk that Young Conaway may pull its punches in either litigation.[22]

And Young Conaway also is necessarily privy to confidential and privileged

information about certain of Appellants' positions on substantially related matters

from *Warren Pumps*.  Yet under the below Courts' reasoning, Patton or his

partners at Young Conaway would be allowed to sue Appellants tomorrow on

behalf of Debtors to seek Debtors' asserted coverage while Young Conaway

simultaneously defends against insurance coverage claims on behalf of Appellants.

This is precisely what is happening here.

Under Rule 1.7, courts have disqualified counsel in similar circumstances

where firms are adverse to their clients (many of whom were insurers) in separate

litigation involving the same legal issues, such as insurance coverage or product

---

[22]  *See In re Congoleum Corp.*, 426 F.3d at 688 ("Absent consent, a lawyer may
not act as an advocate in one matter against a person the lawyer represents in
some other matter, because a conflict that materially limits a lawyer's
representation of her client, even absent direct adversity may hinder a lawyer's
ability to 'recommend or advocate all possible positions' for her clients."); *IBM
v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978) ("[I]t is likely that some 'adverse
effect' on an attorney's exercise of his independent judgment on behalf of a
client may result from the attorney's adversary posture toward that client in
another legal matter."); *End of Road Tr. v. Terex Corp.*, 2002 WL 242464, at *1
(D. Del. Feb. 20, 2002) ("Rule 1.7(a) was enacted to prevent divided loyalties
and to protect against the disclosure of client confidences."); Model R. Prof'l
Conduct 1.7, cmt. [8] ("Even where there is no direct adverseness, a conflict of
interest exists if there is a significant risk that a lawyer's ability to consider,
recommend or carry out an appropriate course of action for the client will be
materially limited as a result of the lawyer's other responsibilities or
interests.").

liability:

- *Colorpix Systems of America v. Broan Mfg. Co., Inc*., 131 F.Supp.2d 331, 339–40 (D. Conn. 2001) (granting manufacturer's motion to disqualify insurer's law firm from fire subrogation case because firm had previously represented manufacturer's parent company in different fire subrogation litigation, giving firm knowledge of parent's uniform defense strategy in product liability litigation);

- *Richardson v. Hamilton Int'l Corp.*, 333 F. Supp. 1049, 1049-52, 1054 (E.D. Pa. 1971), *aff'd*, 469 F.2d 1382 (3d Cir. 1972) (disqualifying attorney in derivative suit against insurer where attorney formerly represented insurer in "the type of work" that suggested knowledge of its finances, structure, and operations relevant to the issues present in the current litigation);

- *Gray v. Commercial Union Ins*. 191 N.J.Super. 590, 598, 468 A.2d 721 (App. Div. 1983) (disqualifying plaintiff's attorney in employment litigation against insurer on grounds, *inter alia*, that attorney concurrently represented insurer in defense of unrelated personal injury matter);

- *Madukwe v. Delaware State Univ*., 552 F. Supp. 2d 452, 462, 465-66 (D. Del. 2008) (disqualifying law firm representing state university's employees in matter substantially related to firm's retention as state university's former outside counsel, where firm has access to "playbook information" of state university's claims handling);

- *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd*., No. CIV. 10-1067-LPS, 2011 WL 2692968, at *7-11 (D. Del. June 22, 2011) (disqualifying defendant's counsel in patent dispute where counsel previously represented plaintiff inventor for years in substantially-related matters of overlapping subject matter by advising on patents, intellectual property rights, and licensing strategies that armed counsel with confidential information relevant to the current dispute and potentially relevant to defenses and counterclaims).

In each of these cases, the court disqualified counsel because conflicts of

interest either (i) would pit counsel against his or her own insurance client in

briefing or in depositions,[23] (ii) involved separate active litigation where the legal issues overlapped,[24] (iii) or counsel was privy to the client's strategy in the same "type of work."[25]

So too here as to Young Conaway's work in *Warren Pumps* and *Imerys*, which constitutes a concurrent conflict of interest under Rule 1.7(a) for the following reasons:

- Young Conaway advocates against its client's (Appellants') interests in *Imerys*, namely, whether Appellants' insurance policies cover asbestos-related personal injury claims.

- Young Conaway may depose the same Appellants' insurance claims managers responsible for asbestos-related personal-injury claims that it represents in *Warren*.[26]

- Young Conaway has served discovery on its own clients in *Imerys* related to insurance coverage issues.[27]

---

[23] *Gray v. Commercial Union Ins.* 191 N.J.Super. 590, 598, 468 A.2d 721 (App. Div. 1983).

[24] *Richardson v. Hamilton Int'l Corp.*, 333 F. Supp. 1049, 1049-52, 1054 (E.D. Pa. 1971), *aff'd*, 469 F.2d 1382 (3d Cir. 1972); *Gray v. Commercial Union Ins.* 191 N.J.Super. 590, 598, 468 A.2d 721 (App. Div. 1983); *Colorpix Systems of America v. Broan Mfg. Co., Inc.*, 131 F.Supp.2d 331, 339–40 (D. Conn. 2001).

[25] *Id.*

[26] *See In re Townson*, No. 12-03027-TOM-7, 2013 WL 865560, at *5 (Bankr. N.D. Ala. Mar. 7, 2013) (disqualifying law firm concurrently representing Trustee in adversary proceeding and another individual in state court action where "each [is a] potential witness[] in the other's action and [firm] could be in a position of examining its own client as a witness"); *Gray v. Commercial Union Ins.* 191 N.J.Super. 590, 598, 468 A.2d 721 (App. Div. 1983).

[27] *In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 247 (D.N.J. 2000) (disqualifying law firm under Rule 1.7 because firm would have to serve discovery and depose its own client); JA1387 February 15, 2021 Notice of

- Young Conaway has represented Appellants for seven years in the *Warren Pumps* matter, learning their negotiation and litigation strategy on identical insurance coverage issues on which it will oppose its clients in *Imerys*.

- Young Conaway assisted in briefing the exact opposite positions on the same insurance coverage issues in *Warren Pumps*.

Young Conaway's and Patton's self-serving supplemental disclosures averring that the conflicts do not hamper its representation do not ameliorate the conflict because a "court will presume that the lawyer in fact learned such secrets and confidences, notwithstanding the lawyer's protest to the contrary."[28]

While Appellants are clearly prejudiced, there is no need to show prejudice or harm from a conflict of interest. Courts presume prejudice: "The evidence need only establish the scope of the legal representation and not the actual receipt of the allegedly relevant confidential information." *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 264, 270 (D. Del. 1980).

---

Service of Future Claimants' Representative's First Set of Interrogatories and Requests for Production on the Plan Objecting Insurers (Serving interrogatories and requests for production on Appellants, Continental and National Union).

[28] *Gray v. Com. Union Ins. Co.*, 191 N.J. Super. 590, 598, 468 A.2d 721, 726 (App. Div. 1983) ("It is unethical for a lawyer to represent a plaintiff in a lawsuit brought against a party whom the lawyer represents on other matters, even if the two representations are unrelated."); *In re Braun*, 49 N.J. 16, 227 A.2d 506 (1967) ("The factual contention of respondent that no actual confidence was received is without merit even if true. The intent of Canons 6 and 37 is violated whenever the conduct of an attorney raises the possibility that he has or may use the confidences of one client for the benefit of another."). Model Rule 1.7's definition of concurrent conflict is identical to Delaware's and New Jersey's rule. *See* N.J. Rules Prof'l Conduct R. 1.7.

## B. The ABA Formal Opinion On Which The District Court Relied Confirms The Concurrent Conflicts Of Interest Here.

The District Court's contrary conclusion that there was no concurrent conflict misinterprets a single paragraph in American Bar Association Opinion 05-435.[29]  That opinion finds no conflict where a law firm represents an insurer in one action, and then represents a plaintiff in a separate tort action against the insurer's insured.  But both *Warren Pumps* and *Imerys* involve insurance coverage litigation where Young Conaway represents the Appellants as named litigants (*Warren Pumps*) and represents the FCR (*Imerys*) seeking coverage from Appellant Insurers.  The *Imerys* bankruptcy case is far from the simple tort action described in the ABA Opinion.

*First*, the ABA Opinion expressly states that there is direct adversity and a concurrent conflict of interest where the liability insurer is "a named party in the litigation."  That is exactly the situation here.  Appellants are named litigants in *Warren Pumps*.  And in *Imerys*, Young Conaway has not only been adverse to the Appellant Insurers on briefing, but is currently negotiating its right to Appellant Insurers' coverage.  The FCR objected to the Appellant Insurers' settlement with its insured—joining the TCC's objection—asserting that the Appellants' "Policies are assets of the estate" "and tort claimants will be deprived of the benefit of such

---

[29]  *See* JA16–18 (quoting ABA Comm. on Ethics & Pro. Resp., Formal Op. 05-435 at 1 (2004)).

assets" if those assets are provided to the insured as opposed to the tort claimants.[30]

And the FCR is currently negotiating its right to insurance from other insurers.[31]

JA1054–163.

**Second**, even absent direct adversity, the Formal Opinion makes plain that a

concurrent conflict of interest is present "if there is a ***significant risk*** that a

lawyer's action on behalf of one client will ***materially limit the lawyer's***

***effectiveness*** in representing another client in a different case; for example, when a

decision favoring one client will ***create a precedent likely to seriously weaken*** the

position taken ***on behalf of the other*** client."  ABA Formal Op. 05-435.  That

punch-pulling is precisely the risk here, as explained *supra* at 26-30, n. 20.

Thus, a concurrent conflict of interest arises, where information the attorney

"has acquired about the insurer's business practices, such as claims handling and

case evaluation procedures, would be materially helpful to the plaintiff who is

adverse to the insurer's insured."  *See* Formal Op. at 2.  And even if such

information "may be known by other, similarly-experienced lawyers, including

both lawyers who do and lawyers who do not represent this insurer," the lawyer

---

[30]  *See* JA1375; JA1370-373.

[31]  JA1054–163; JA1242 ("The Debtors, XL, the Tort Claimants' Committee, and
    the FCR . . . agreed to enter into non-binding mediation in an attempt to reach a
    resolution regarding the amount of coverage to which the Debtors claim to be
    entitled under the XL policies.")

may still be conflicted in violation of the Rules of Professional Conduct if the information was acquired in connection with her representation of the insurer. *Id.*

## II. ESTATE PROFESSIONALS ARE *PER SE* DISQUALIFIED IF THEY HAVE A CONCURRENT CONFLICT OF INTEREST.

### A. Young Conaway Has A Concurrent Conflict Under The Section 327 "Disinterested" Standard.

"In addition to the standards established by professional ethics, attorneys retained in bankruptcy proceedings are also required to meet the restrictions imposed by section 327 of the Bankruptcy Code." *In re Congoleum*, 426 F.3d at 688. And as with Rule 1.7, under the Bankruptcy Code's Section 327 "Disinterested" Standard, Patton and Young Conaway have a disqualifying, concurrent conflict. Section 327 of the Bankruptcy Code authorizes trustees to employ "attorneys, accountants, appraisers, auctioneers, or other professional persons that [a] do not hold or represent an interest adverse to the estate, and [b] that are disinterested persons," as that term is defined in 11 U.S.C. § 101(14). 11 U.S.C. § 327(a). The statute provides that once an actual conflict is identified and an objection is lodged, disqualification is mandatory: the bankruptcy court "shall disapprove" the conflicted professional. 11 U.S.C. § 327(c). This Court has therefore recognized that a professional with an "actual conflict" must be

disqualified under § 327.[32]  *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).  Representatives for the FCR and creditors are *per se* disqualified on this basis.  *In re Pittsburgh Corning Corp*., 308 B.R. 716, 721–22 (Bankr. W.D. Pa. 2004).

When analyzing whether a conflict exists, the Bankruptcy Court must ask whether any competing interest of a court-appointed professional "created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one."  *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994) (citing *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987)).  "[D]oubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification."  *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 340 B.R. 740, 750 (Bankr. D. Del. 2006).

Put differently, a "court should generally disapprove employment of a professional with a potential conflict," unless either (1) "every competent professional in a particular field is already employed by a creditor or a party in interest" or (2) "where the possibility that the potential conflict will become actual is remote[] and the reasons for employing the professional in question are

---

[32]  *In re Pillowtex, Inc.*, 304 F.3d 246, 251–52 (3d Cir. 2002); *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476–77 (3d Cir. 1998); *see also* 3 COLLIER ON BANKRUPTCY § 327.01.

particularly compelling." *In re Marvel Ent. Grp., Inc.*, 140 F.3d at 476 (quoting *In re BH & P, Inc.*, 949 F.3d at 1316–17). Nothing in this case warrants use of those narrow exceptions to the general rule.

As to actual conflicts, waivers "are ordinarily not effective."[33] That is true because of the peculiar setting of bankruptcy. "Conflict of interest rules are more strictly applied in the bankruptcy context than in other areas of the law, at least insofar as they relate to professionals retained by the estate."[34] What "may be acceptable in a commercial setting, where all of the entities involved are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at, perhaps, the expense of another."[35]

The *per se* disqualification standard applies to Patton's and Young Conaway's concurrent conflict here. In *In re Pittsburgh Corning Corp.*, 308 B.R. 716 (Bankr. W.D. Pa. 2004), the FCR sought to retain special insurance counsel

---

[33]  *In re Congoleum Corp.*, 426 F.3d at 692 ("We note also in this respect that waivers under § 327(a) are ordinarily not effective."); *see In re Marvel Entm't Grp., Inc*., 140 F.3d at 477 (3d Cir. 1998) ("Section 327(a) presents a per se bar to the appointment of a law firm with an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict."); *In re Congoleum Corp*., 426 F.3d at 690–92.
[34]  1 COLLIER ON BANKRUPTCY, § 8.03[1] (15th ed. 2002).
[35]  3 COLLIER ON BANKRUPTCY § 328.05[2]; *see also* Robin E. Phelan & John D. Penn, *Bankruptcy Ethics, an Oxymoron*, 5 AM. BANKR. INST. L. REV. 1, 27 (1997) ("What may be ethically acceptable in commercial settings (e.g., waivers upon informed consent) will not necessarily pass muster under section 327.").

that previously represented the debtors' two shareholders in a mass-tort asbestos-related insurance coverage matter. *Id.* at 720. Applying the Third Circuit's *per se* disqualification standard under Section 327, the court disqualified the FCR's choice of counsel, finding that an undertaking of "representation of those who have claims against its former client" made the law firm conflicted. *Id.* at 721. As the court explained, the fact that the conflicted counsel had been "privy to confidential information as to how [the debtor's shareholder] intended to defend against his suit, minimize any recovery to be paid, and assist the insurance company in defending against his suit and claim for damages," gave rise to an "unacceptable taint." *Id.* at 735. A similar concern is present here given Young Conaway's representation of the Appellant Insurers in a substantially similar asbestos-related matter. Indeed, the conflict here is more pressing because it is a concurrent conflict under Rule 1.7, rather than a former client conflict under Rule 1.9 as in *Corning*.

Other cases demonstrate that "direct adversity" exists where a law firm is adverse to a client in separate litigation involving the same subject matter. In *In re Hammer*, the Ninth Circuit Bankruptcy Appellate Panel reversed the bankruptcy court's determination of disinterestedness and a lack of conflict when supplemental disclosures indicated that the law firm employed by the debtor's trustee previously

was involved in the same subject matter in dispute in the pending bankruptcy.[36]

And in *In re eToys*, representing an "interest adverse to the estate" in a separate matter, as Young Conaway does here, was *per se* disqualifying.[37]  The firm was disqualified notwithstanding that firm represented a third party unrelated to debtors' bankruptcy case, involved the firm's service only as local counsel, and accounted for only .24% of firm's total billings.

Other bankruptcy courts around the country find disqualifying conflicts of interest in similar situations under the Section 327 "disinterested" standard:

- *In re M & M Mktg., L.L.C.*, 426 B.R. 796, 804 (B.A.P. 8th Cir.), as corrected (June 11, 2010), *aff'd sub nom. In re M&M Mktg., L.L.C.*, 397 F. App'x 258 (8th Cir. 2010) (reversing Bankruptcy Court's decision to not disqualify attorney who concurrently represented Trustee as well as estate creditors with interests adverse to the estate);

- *In re Cecil*, No. 8:12-CV-958-T-27, 2012 WL 3231321, at *2-4 (M.D. Fla. Aug. 3, 2012) (reversing Bankruptcy Court and denying approval of special counsel that also represented creditor with claims against debtor);

- *Matter of Status Game Corp.*, 102 B.R. 19, 21–22 (Bankr. D. Conn. 1989) (Court denied authority for Chapter 11 debtor to retain prepetition counsel because of counsel's past and current representation of debtor's principal secured lender.);

- *In re The Harris Agency, LLC*, 462 B.R. 514, 523-25 (E.D. Pa. 2011) (disqualifying law firm where conflicted attorney represented Debtor yet also represented adverse interests in "a matter directly related and

---

[36]  No. BAP WW-06-1373-MODJ, 2007 WL 7540945, at *1-*2 (B.A.P. 9th Cir. Aug. 17, 2007).

[37]  *In re eToys, Inc.*, 331 B.R. 176, 192 (Bankr. D. Del. 2005).

integral to the Chapter 11 re-organizational process," even where that
representation consisted of just one hour of billed work);

- *In re Granite Partners, L.P.*, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998)
(granting denial of compensation for law firm that possessed disabling
concurrent conflicts stemming from its representation of Trustee and of
Creditor, among other connections with party in interest).

Here, Young Conaway is adverse to the future claimants and Debtors
because both seek Appellant Insurers' insurance coverage. And Young Conaway
asserts defenses to insurance coverage on behalf of Appellants in *Warren Pumps*,
from whom Debtors and the FCR (represented by Young Conaway) seek insurance
coverage in this bankruptcy. Young Conaway is also not "disinterested" as to the
estate under Section 327 because Young Conaway represents Debtors' insurers and
advocates positions that directly oppose Debtors' and the future claimants'
positions on insurance coverage in *Imerys*.

That there may now be an ethical wall in place is irrelevant. For eight
months before erecting this alleged wall, Patton worked as a prepetition pseudo or
prospective FCR, during which time the Debtors disclosed to the FCR and current
claimants privileged documents—something the Debtors never denied.[38]
Regardless of what was clawed back after-the-fact, prepetition negotiations with no
bankruptcy court supervision tainted this representation. Even an appearance of

---

[38] JA329 ("The Debtors admit only that certain publicly available information,
including case pleadings, and non-privileged documents were provided to Patton
and/or his counsel.").

impropriety should not exist for an officer of the court such as an FCR.[39]

**B.    The *Per Se* Disqualification Standard
       Applicable to Bankruptcy Professionals
       Should Apply With Equal Or Greater Force To FCRs.**

The District Court held that the *per se* disqualification standard generally

applied in Chapter 11 matters under § 327 does not apply to FCRs.  The court's

only reasoning, however, was that importing the disinterestedness rules of Section

327(a) into Section 524(g) "would undermine the bankruptcy court's broad

discretion under § 524(g)."  JA18.  That rationale makes no sense on its own

terms—a bankruptcy court similarly has broad discretion under Section 327, and

yet the per se disqualification rule applies.[40]  And in fact, courts in this Circuit have

applied Section 327 to FCR appointments, so there is no justification for excluding

the FCR from the Section 327 ethical standards here.[41]

---

[39]  *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 530 (3d Cir. 1982) ("[A] lawyer
[and officer of the court] must avoid even the appearance of professional
impropriety . . . [in] maintaining public confidence in the integrity of our
system of justice and in the legal profession."); *Allen v. Stewart Title Guar.*, 246
F.R.D. 218, 219 (E.D. Pa. 2007) ("As part of this determination [to appoint
class counsel] many courts consider whether counsel is free of conflicts of
interest, since the responsibility of class counsel to absent class members whose
control over their attorneys is limited does not permit even the appearance of
divided loyalties of counsel.").

[40]  *See, e.g.*, *In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002) (reviewing
employment of law firm for abuse of discretion under Section 327); *In re
Marvel Ent'mt Group, Inc.*, 140 F.3d 463, 470, 476 (3d Cir.1998) (reviewing
district court's disqualification of law firm for abuse of discretion).

[41]  *See In re Pittsburgh Corning Corp.*, 308 B.R. 716, 733 (Bankr. W.D. Pa. 2004)
(applying Section 327 to counsel for the FCR); Order Authorizing the

In any event, the considerations animating the foregoing features of § 327—

its non-waivable limitations and *per se* disqualification requirement—apply with

*greater* force in the context of the FCR because the FCR's clients have no voice.[42]

Like minors or incompetents, future claimants—whose asbestos-related injuries

may not manifest for decades—are incapable of protecting their own interests in

litigation.   Indeed, as detailed *supra* at 6–7, the FCR position was created

precisely to protect clients who cannot speak for themselves and when creating the

FCR role, Congress invoked a process used for a guardian *ad-litem*.[43]   The

requirements of § 524(g) are "specifically tailored to protect the due process rights

of future claimants." [44]

---

Appointment of R. Scott Williams as Futures Representative at 3, *In re Congoleum Corp., et al.*, No. 03-51524 (Bankr. D.N.J. Feb. 18, 2004), ECF No. 355 (allowing FCR to employ professionals consistent with § 327); Order, *In re Combustion Eng'g*, No. 03–10495 (Bankr. Del. filed Mar. 17, 2003) (same); Order, *In re Armstrong World Indus.*, *Inc.*, No. 00–4471 (Bankr. Del. filed Mar. 2, 2002) (same); Order, *In re Federal-Mogul Glob. Inc.*, No. 01–10578 (Bankr. Del. filed Feb. 11, 2002) (same); Order, *In re The Babcock & Wilcox Co.*, No. 00–10992 (Bankr. E.D. La. filed Oct. 4, 2000) (FCR appointed pursuant to 11 U.S.C. §§ 105, 327, and/or 1103).

[42] *See* Mark D. Plevin, Leslie A. Epley, Clifton S. Elgarten, *The Future Claims Representative in Prepackaged Asbestos Bankruptcies: Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for Burdened Bankruptcy Courts*, 62 N.Y.U. ANN. SURV. AM. L. 271, 325 (2006) ("[T]he FCR is closer to a guardian ad litem or court officer than a bankruptcy professional. The standards that should apply in judging the independence of an FCR are the highest that the law contemplates.").

[43] *In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985) (describing its role and specifically referencing the representative as a *guardian ad litem*).

[44] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004).

As courts have recognized, when a guardian *ad-litem* is required to represent the interests of some party, that party almost by definition cannot waive any conflict the guardian *ad-litem* has.  For example, children are not "competent to 'waive' the conflict" that arises if the guardian *ad litem* is connected to their parents and their interests are potentially in conflict.[45]  Indeed, a guardian *ad-litem* is typically appointed to *resolve* conflicts of interest that would otherwise exist. For example, a guardian *ad-litem* might be appointed to "represent unknown or missing owners of land and their heirs in actions involving mineral rights"[46] or to resolve conflicts of interest in an employee profit-sharing plan under the Employee Retirement Income Security Act ("ERISA").[47]  It is self-evidently improper to suggest that the guardian *ad-litem* could serve if subject to a conflict that would call into question his ability to zealously protect the interests he was appointed to represent.

This Court in *Congoleum* ruled that counsel cannot waive actual conflicts of interest even on behalf of current claimants without contacting those claimants

---

[45]  *McDonald v. Hammons*, 936 F. Supp. 86, 88 (E.D.N.Y. 1996); *In re A.T.*, 744 N.W.2d 657, 665 (Iowa Ct. App. 2007) (holding twelve-year-old child not competent to waive the conflicts of interest that existed for her *guardian ad litem* and attorney in termination of parental rights action).

[46]  *In re Fairbanks Co.*, 601 B.R. at 839–40 (citing W. Va. Code § 55-12A-5(d)).

[47]  *See In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 399-401 (3d Cir. 2006) (upholding order removing ERISA plan administrators from role managing litigation on behalf of retirement plan, given conflict of interest, and replacing with guardian *ad litem*).

41

individually and obtaining their informed consent.[48]    A prospective waiver was

ineffective because the law firm did not obtain ***individual*** waivers from each tort

claimant, instead obtaining a prospective waiver from the co-counsel's firm.    *In re*

*Congoleum Corp.*, 426 F.3d 675, 681 (3d Cir. 2005).  That is not possible with future

claimants.  The answer to that problem is not to simply ignore the conflict of interest.

It is to appoint a different, non-conflicted FCR to protect the due process rights of

future claimants as Congress envisioned when enacting § 524(g).[49]    In short,

compliance with ethical rules is even more critical for FCRs than the TCC under

either the "stricter" guardian *ad-litem* standard or the Section 327 Standard.  JA18.

An attorney appointed to resolve conflicts cannot be conflicted himself.  *See In re*

*Pressman-Gutman Co., Inc.*, 459 F.3d 383, 394 (3d Cir. 2006).

    The FCR's attempt to waive the conflict here on behalf of all future claimants

is not unlike the situation where a single class member attempts to unilaterally waive

a conflict on behalf of the *entire* class, a position found plainly untenable by

courts.  *See Davis v. Kraft Foods N. Am.*, No. 03–6060, 2006 WL 237512, at \*13

(E.D. Pa. Jan. 31, 2006) (requiring replacement counsel at class certification stage

---

[48]    *In re Congoleum Corp*., 426 F.3d 675, 691 (3d Cir. 2005) (waiver on behalf of
    claimants was ineffective).

[49]    Similarly, at least one court has held that a lawyer seeking to represent a class
    may not do so under Federal Rule of Civil Procedure 23 if he has a conflict of
    interest, because "[u]nidentified class members cannot waive a potential
    conflict of interest."  *Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 120, 132-33
    (D.D.C. 1994).

where putative class representative's waiver of concurrent conflict found ineffective as to entire class under Pa. R. Prof'l Conduct 1.7); *Palumbo v. Tele-Commc'ns., Inc.*, 157 F.R.D. 129, 132–33 (D.D.C. 1994) (disqualifying counsel under D.C. R. Prof'l Conduct 1.7 where mass conflict waiver impossible as "[u]nidentified class members cannot waive a potential conflict of interest").[50]

## III.   APPELLANTS DID NOT PROSPECTIVELY WAIVE THE FCR'S CONFLICT.

Waivers are ineffective for concurrent conflicts of interest in Chapter 11 cases, especially for an FCR, and thus the FCR's conflict required disqualification as a matter of law.  Even when conflicts are waivable, the only way to waive a concurrent conflict outside the bankruptcy context is to secure the consent of ***both*** affected parties.[51]  But that is impossible here—the future claimants plainly cannot

---

[50]   *See also United States v. Jefferson Cnty*., No. CV-74-S-12-S, 2008 WL 11394184, at *31 (N.D. Ala. Jan. 16, 2008) (disqualifying counsel under Ala. R. Prof'l Conduct 1.7 where two prominent class members unsuccessfully attempted to waive conflict on behalf of entire class); *In re Terazosin Hydrochloride Antitrust Litig*., 223 F.R.D. 666, 677 (S.D. Fla. 2004) (casting doubt on ability of even twenty-three "sophisticated putative class members" to waive actual or potential conflicts on behalf of the entire class); *Molina v. Mallah Org., Inc*., 804 F. Supp. 504, 513 n.16 (S.D.N.Y. 1992) (expressing doubt on viability of conflict waiver "for a class of at least 470 persons").

[51]   *See* Model Rules of Pro. Conduct R. 1.7(b)(4) (requiring that "each affected client gives informed consent, confirmed in writing"); Del. Lawyers' Rules of Pro. Conduct R. 1.7(b)(4) (same); *see also In re Katz*, 981 A.2d 1133, 1141 (Del. 2009) (finding Rule 1.7(b) violation where lawyer failed to obtain consent of both clients); *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 701 (Bankr. D. Del. 2016) (stating that Delaware Lawyers' Rules of

consent to Patton's conflict.  Nor did insurers waive.  The courts below erred in determining that the waiver letter does not apply.  The waiver expressly carves out matters "substantially related" to the *Warren Pumps* matter.  *See supra* at 17–18. This asbestos case is "substantially related" to the *Warren Pumps* asbestos case.

### A.     The Prospective 2014 Waiver Does Not Apply Here.

The FCR and Young Conaway are advocating for Appellants' policies to cover long-tail asbestos claims.  He can be expected to argue that primary policies were properly exhausted, excess policies follow-form, horizontal exhaustion applies, and corporate successors are entitled to coverage under the policies. Appellants' Opening Br. on Appeal to D. Ct. at 15–16, 38–39.  Those are precisely the issues Young Conaway litigated and is litigating on behalf of the insurers in *Warren Pumps* involving similar if not identical policy language as in *Imerys*. JA908–09, 913–21.  That is still an active case pending in Wilmington, Delaware before Judge Paul Wallace.

Below, the Debtors tried to get around these inconvenient facts by arguing that "substantially related" means the "same transaction" or "legal dispute," and the courts below agreed.  But the engagement letter demonstrates by its plain terms that this is wrong.  The prospective waiver to which Patton and Appellants agreed

---

Professional Conduct "require that a conflicted attorney secure a written waiver from the affected clients").

44

provides that "You agree that the Firm may represent other clients . . . provided that the Firm is not then representing and has not previously represented You *in the same matter or a matter substantially related to the same matter*." If "substantially related" meant only the "same matter," then that clause would be superfluous. And it is hornbook law that contracts should be read to give effect to every term.[52]

The lower courts' explanation was that if this matter is "substantially related" to *Warren Pumps* then it would undermine Young Conaway's ability to represent other clients in bankruptcy proceedings, which the waiver envisions. JA19; JA39. But that renders the "substantially related" exception to the waiver meaningless. Not every bankruptcy where insurance policies are the estate's property necessarily involves all of these issues. The waiver applies to "workout, bankruptcy, and insolvency proceedings" *and* "in connection with trusts established pursuant to section 524(g) of the Bankruptcy Code." The former category plainly could encompass bankruptcies that are not "substantially related" to *Warren Pumps*, *i.e.*, bankruptcies that do not involve long-tail asbestos claims and the unique insurance coverage issues that come with them. As for the latter category, the fact that *Warren Pumps* in particular may be "substantially related" to

---

[52]  *In re ASHINC Corp.*, 683 F. App'x 131, 141 (3d Cir. 2017) ("[W]e must avoid 'interpretations that render contract provisions meaningless or superfluous.'").

most bankruptcy matters involving section 524(g) is no reason not to enforce the

plain text of that exception to the prospective waiver.  That is a standard form

waiver Young Conaway employs with many insurer clients, and other matters may

have less of an overlap with the common section 524(g) scenario than does *Warren

Pumps*.[53]  Indeed, counsel's having analyzed the "same loan documents" was

enough to make the two matters in *In re Meridian* not only "substantially related,"

but in essence the "same matter."[54]  In both *Warren Pumps* and *Imerys*, Young

Conaway is analyzing the same insurance coverage issues related to Appellants'

form insurance policy language to determine if there is coverage for asbestos-

related personal-injury claims.  This shows "substantial relationship" between the

cases.

> **B.    Even If Appellants Prospectively Waived The Conflict,
> They Should Have Been Notified Of The Conflict So They
> Could Hire Different Counsel In *Warren Pumps*.**

Patton never disclosed his conflicts, nor could he have under his retention

agreement with Imerys.  JA185–86.  His engagement letter with Imerys barred him

---

[53]  JA898–99 ¶ 7 (referring to the conflict-waiver provision as "an exemplar" of provisions "from Young Conaway's engagement letter with insurance companies").

[54]  *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 340 B.R. 740, 746–47 (Bankr. D. Del. 2006) (The duty of confidentiality "applies not only to matters communicated in confidence by the client but also to *all information* relating to the representation, *whatever its source*" citing Model R. Prof'l Conduct 1.6, cmt. [3]) (emphasis in original).

46

from disclosing that information to Appellants, which would have allowed Appellants to hire different counsel in *Warren Pumps* before the conflict arose. JA186. One wonders about the propriety of an engagement letter that prohibits a lawyer from disclosing a conflict to an existing client.

This alone is a fatal problem for the engagement. Under Rule 1.7(b)(4), only with "informed consent, confirmed in writing," after "consult[ing] with the clients," may a lawyer undertake a case giving rise to a concurrent conflict.[55] A comment to Rule 1.7 highlights that absent informed consent, a lawyer may not continue with a conflicted relationship. That comment states that "when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent."[56] This is precisely the situation here, as Debtors did not allow Patton to disclose the conflict to Appellants. Such notice would have enabled Appellants to decide whether to retain different counsel in *Warren Pumps* as the Young Conaway conflict arose.

---

[55] *See* Model R. Prof'l Conduct 1.7, cmt. [2].

[56] *See* Model R. Prof'l Conduct 1.7, cmt. [19]; *In re Dolan*, 76 N.J. 1, 384 A.2d 1076 (1978) ("Consequently, if any conflicting interest could arise which would stand in the way of that kind of unstinting zeal, then the client must be so informed and the attorney may continue his limited representation only with the client's informed consent."); *Gray v. Com. Union Ins. Co.*, 191 N.J. Super. 590, 599, 468 A.2d 721, 727 (App. Div. 1983) (same).

## IV.    INSURERS DID NOT FORFEIT ANY ARGUMENT ON CONFLICTS OF INTEREST.

Finally, the District Court was plainly incorrect to hold that Appellants had forfeited their objection to the *Warren Pumps*-related conflict.  The Bankruptcy Court did not find this argument waived and instead considered it on the merits.  The normal rule that issues raised in or addressed by the lower court are preserved for appeal should have applied.[57]  Indeed, this Court has made clear that arguments are preserved if they are presented with "a minimal level of thoroughness" so that the lower court may "consider its merits."  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009).

Appellants easily cleared that bar here.  When Patton belatedly revealed his firm's representation of Debtors' insurers in the *Warren Pumps'* matter at the April 26, 2019 retention hearing, Appellants immediately objected.  Indeed, the Bankruptcy Court ordered Patton to make additional disclosures regarding this potential conflict of interest.  JA32.  Patton then made two supplemental disclosures after his retention hearing on May 13 and May 17, and Appellants promptly filed a Supplemental Objection on May 17, 2019.  JA897; JA901; JA939.  The FCR then responded to Appellants' Supplemental Objection.  JA960.  And the

---

[57]    *See, e.g.*, *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

Bankruptcy Court considered the parties' arguments and evidence in full in its nine-page May 31, 2019 letter decision: "because the Supplemental Declarations contain further disclosures on the Debtors' Motion, which I previously suggested is *sui generis*, I will address the [Supplemental Objection of Appellants]." JA35. Bankruptcy courts routinely consider objections to supplemental disclosures and even disqualify counsel on the basis of supplemental disclosures.[58]

The District Court nevertheless deemed the argument waived. The only case it cited as support was one in which the appellant "cho[se] not to raise [an] issue before the Bankruptcy Court," and did not even raise it on appeal. *In re Am. Biomaterials Corp.*, 954 F.2d 919, 927 (3d Cir. 1992). That case stands for the unexceptionable proposition that an appellate court generally "refuse[s] to consider issues on appeal that were not raised in the lower courts." *Id.* But as the District Court acknowledged, Appellants *did* raise the argument in the Bankruptcy Court, to which the FCR responded, and the Bankruptcy Court "comprehensively addressed" it, as Appellees asserted. Appellees' Opp. Br. on Appeal to D. Ct. at 17, No. 1:19-cv-00944-MN (Dec. 16, 2019), Dkt. 22. The record thus plainly belies the District Court's erroneous waiver holding.

---

[58] *In re Hammer*, 2007 WL 7540945, at *1-*2 (considering disqualifying counsel based on supplemental disclosures); *In re Licking River Mining, LLC*, 562 B.R. 351, 355-56, 361 (Bankr. E.D. Ky. 2016) (same).

## V.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW BY IGNORING THE FCR'S INADEQUATE DISCLOSURES.

The bankruptcy court ignored the FCR's and Young Conaway's failure to disclose its connections to the *Warren* case.  These inadequate disclosures and the FCR's three *post-hoc* declarations (not subject to cross examination) justified disqualification on their own.  The FCR attempted to turn the tables below by asserting that Appellants waived these objections, JA970, but the FCR's initial disclosure statement did not discuss its representation or solicitation of Continental Insurance, a representation that makes the FCR adverse to the Debtors' Estate, which seeks insurance from Continental.

Violating these disclosure rules alone is enough to disqualify a professional and deny compensation, "regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were *de minimis*."[59]  Good faith or negligence does not excuse a failure to disclose.[60]  None of this disclosure happened below.

---

[59]  *In re Universal Bldg. Prod.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (failure of prospective counsel for unsecured creditors' committee to provide complete and accurate disclosure at the outset of their connections with creditors warranted denial of committee's applications); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236–38 (Bankr. E.D. Cal. 1988) (disqualifying special counsel who failed to disclose that it represented co-defendants in litigation it was handling for debtor).

[60]  *Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*, 2011 WL 4458779, at *6 (M.D. Pa. Sept. 23, 2011); *In re Lee*, 1988 WL 130076 (Bankr. C.D. Cal. Nov. 22, 1988).

Finally, the Bankruptcy Court's inadequate exploration of the question whether Young Conaway represented current talc claimants was also an abuse of discretion. *See In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003) ("We review questions concerning the scope or opportunity for discovery for an abuse of discretion."). On the day of the initial April 26, 2019 retention hearing, Young Conaway's website said that the firm currently represented talc claimants. JA751–53 at 103:21–105:4; JA853–56. After being ordered to make a disclosure to address that question, Patton declared only that "Neither Young Conaway nor I represent any clients who are asserting claims based on exposure to talc." JA898 ¶ 4. The Bankruptcy Court found this statement sufficient to address the questions raised by the firm's prior public statement on its website. But it self-evidently did not. Patton's statement does not address whether his firm had *previously* represented individuals with live claims based on exposure to talc. And if the firm never did represent such claimants, then the firm's website made a false representation. Either way, further discovery was warranted. That is particularly true because the possibility that Young Conaway owes professional responsibilities to clients who are current talc claimants—even if those claimants are now former clients—goes to the very heart of the concern that the FCR may not adequately protect future claimants and other parties in interest against the interests of current claimants. *See supra* at 5, 8–10, 16. Thus, at a minimum, the Court should reverse

and remand for further exploration of Young Conaway's connections to and solicitations of talc claimants.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the lower courts' rulings and orders.

Dated: March 10, 2021                    Respectfully Submitted,

By: */s/ Tancred Schiavoni*
      Tancred Schiavoni
      tschiavoni@omm.com

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: +1 212 326 2000
Facsimile:  +1 212 326 2061

Tancred Schiavoni
Bradley N. Garcia
Janine Panchok-Berry
tschiavoni@omm.com
bgarcia@omm.com
jpanchok-berry@omm.com

*Counsel for Appellants*

# COMBINED CERTIFICATIONS

**1. Bar Membership:** I certify that I am a member of this Court's bar.

**2. Word Count, Typeface, and Type Style:** I certify that this brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because the brief (as indicated by my word processing program, Microsoft Word) contains 12,864 words, excluding those portions excluded under Rule 32(a)(7)(B)(iii).  I also certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because this brief has been prepared in the proportionally spaced typeface of 14-point Times New Roman.

**3. Service:** I certify that on March 10, 2021 I filed this brief electronically via this Court's CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the CM/ECF system.

**4. Paper Copies:** I certify that the text of the electronic brief filed via ECF is identical to the text of the paper copies that will be delivered to the Court.

**5. Virus Check:** I certify that I have performed a virus check using the latest version of the Windows Defender, version 1.333.127.0 virus scanning software as of March 10, 2021.

Dated: March 10, 2021                    By: */s/ Tancred V. Schiavoni*
                                                    Tancred V. Schiavoni

## <u>CERTIFICATE OF SERVICE</u>

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Nos. 20-3485, 20-3486, 20-3487, 20-3488

Cyprus Historical Excess Insurers v. Imerys Talc America, Inc., et al.

I hereby certify that on March 10, 2021, a true and correct copy of the foregoing *Opening Brief on Appeal* was caused to be served via ECF and electronic mail upon the parties identified on the attached service list.

Dated: March 10, 2021            */s/ Tancred Schiavoni*
                                 Tancred Schiavoni
                                 O'MELVENY & MYERS LLP
                                 Times Square Tower
                                 7 Times Square
                                 New York, New York  10036-6537
                                 Telephone:  +1 212 326 2000
                                 Facsimile:   +1 212 326 2061

                                 *Counsel for Appellants*

## SERVICE LIST

| **Appellee** | Marcos Alexis Ramos |
|---|---|
| **Imerys Talc America, Inc.** | Richards, Layton & Finger, PA |
| | One Rodney Square, Suite 600 |
| | 920 N. King Street |
| | Wilmington, DE 19801 |
| | (302) 651 7700 |
| | Fax: 302 651 7701 |
| | Email: ramos@rlf.com |
| | Roman Martinez |
| | Gregory B. in den Berken* |
| | Latham & Watkins LLP |
| | 555 Eleventh Street, NW, Suite 1000 |
| | Washington, DC 20004-1304 |
| | (202) 637-2200 |
| | roman.martinez@lw.com |
| | greg.indenberken@lw.com |
| | |
| | Roman Martinez |
| | Greg in den Berken |
| | Carolyn Flynn |
| | Jeffrey E. Bjork |
| | Amy C. Quartarolo |
| | Helena G. Tseregounis |
| | Latham & Watkins LLP |
| | 355 South Grand Avenue |
| | Suite 100 |
| | Los Angeles, CA 90071-1560 |
| | (213) 485-1234 |
| | roman.martinez@lw.com |
| | jeff.bjork@lw.com |
| | amy.quartarolo@lw.com |
| | helena.tseregounis@lw.com |
| | Greg.indenBerken@lw.com |
| | Caroline.Flynn@lw.com |
| | |
| | Richard A. Levy |
| | Latham & Watkins LLP |

| | |
|---|---|
| | 330 North Wabash Avenue<br>Suite 2800<br>Chicago, IL 60611<br>(312) 876-7700<br>richard.levy@lw.com |
| **Interested Party**<br>**Future Claimants' Representative** | Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Sara Beth Kohut (No. 4137)<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>skohut@ycst.com |
| **Interested Party**<br>**Official Committee of Tort Claimants** | Natalie D. Ramsey (DE Bar No. 5378)<br>Mark A. Fink (DE Bar No. 3946)<br>Robinson Cole<br>Telephone: (302) 516-1700<br>Facsimile: (302) 516-1699<br>Wilmington, DE 19801<br>Telephone: (302) 295-4800<br>Facsimile: (302) 351-8618<br>nramsey@rc.com<br>mfink@rc.com<br><br>Michael R. Enright<br>Robinson Cole<br>280 Trumbull Street<br>Hartford, CT 06103<br>Telephone: (860) 275-8290<br>Facsimile: (860) 275-8299<br>menright@rc.com |